
U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| MEF | *610 Federal Plaza* |
| F. #2021R00016 | *Central Islip, New York 11722* |

May 9, 2025

<u>By ECF</u>

The Honorable Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

   Re: United States v. Carmine Simpson
     <u>Criminal Docket No. 21-97 (GRB)</u>

Dear Judge Brown:

  The government respectfully submits this letter in anticipation of defendant Carmine Simpson's sentencing, scheduled for May 9, 2025, at 11:30 a.m. On March 24, 2023, the defendant pleaded guilty to one count of sexually exploiting a minor, in violation of Title 18, United States Code, Sections 2251(a) and (e). The defendant, a New York City police officer, who was compulsively using Twitter to communicate with minors, caused multiple minors to create sexually explicit images of themselves, including as to the count of conviction, directing Jane Doe 2, a teenager, to spank herself while nude and take a picture, which caused Jane Doe 2 to send a picture of herself, kneeling on a bed, where she is nude from the waist down, her backside is red, and her vagina is visible in between her legs. Additionally, as described below, the defendant asked victims to get naked, choke themselves, gag themselves, masturbate and write demeaning phrases on their bodies with a marker, all for his own sexual pleasure.

  As set forth in the Presentence Investigation Report ("PSR"), dated July 28, 2023, the defendant's total offense level under the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines"), based on the parties' stipulation in the plea agreement, is 49. PSR at ¶¶ 25-119. Because the total offense level under the Guidelines is capped at 43, that is the effective total offense level. <u>Id.</u> at ¶ 119 (citing U.S.S.G. Chapter 5, Part A (comment n.2)). Given an offense level of 43 and a Criminal History Category of I, the advisory Guidelines sentencing range is life. PSR at ¶ 173. Because the statutorily authorized maximum is 360 months' imprisonment, that is the effective Guidelines range. <u>Id.</u>

  For the reasons set forth below, the government respectfully submits that, after considering the factors set forth in 18 U.S.C. § 3553(a) ("Section 3553(a)"), in particular, the seriousness of the offense and the need to protect the community, the Court should sentence the defendant to a term of custody of 25 years, followed by an extended term of supervised release. Such a term is sufficient but not greater than necessary, for this defendant, and consistent with

recent sentences in comparable cases within this district and nationally.

I. Background

The facts underlying the offense conduct in this case are set forth in the PSR.

A. The Investigation (PSR at ¶¶ 5-8)

On or about December 30, 2020, law enforcement in Maryland received two cybertips from the National Center for Missing and Exploited Children ("NCMEC"), informing them that an individual, later identified as the defendant, was utilizing a Twitter account to communicate with and persuade minors to produce and send sexually explicit images and videos to him. These reports stemmed from a November 24, 2020 police report, which was filed with the Maryland police by the mother of John Doe 2, a 13-year-old transgender male. The police report indicated that John Doe 2's mother located sexually explicit videos of her child, which John Doe 2 had shared with the defendant on Twitter. John Doe 2's mother screen captured some of the message content. This screen capture reflected nude images of John Doe 2, including one with their fingers in their vagina. In response to the images, the defendant said, "You did amazing [NAME]", "Now put on some clothes and get out of there." Also visible is a partial text that read, "Got any siblings? Got any sex toy." As a result of these reports, the defendant's Twitter account was shut down and the case was referred to the Federal Bureau of Investigation ("FBI") for investigation.

B. The Offense Conduct

After this report, Twitter disclosed business records for the defendant's account that were reviewed by the FBI. Based on a review of these records, law enforcement determined that the defendant utilized several different vanity names on Twitter, and generally identified himself as "CHRIS," a 17-year-old male from Long Island, New York, which he clarified was just an alias, and that his real name was "CARMINE." The defendant often requested that potential victims send him nude images and videos and routinely requested that they engage in live chat sessions on FaceTime or Snapchat. The defendant also discussed his various kinks, including having the victims write sexual phrases on their nude bodies, and knife and gun play. When communicating with these minors, the defendant was not only verbally abusive, but also encouraged the minors to engage in destructive behavior, such as choking themselves with belts, and cutting themselves. Based on a review of the Twitter records, the defendant obtained at least 18 photographic images and 33 videos containing child pornography. He also obtained at least 162 photographic images and 48 videos containing child erotica.

i. Jane Doe 1 (PSR at ¶ 9)

In March 2020, the defendant exchanged messages with Jane Doe 1, an approximately 16 to 17 year-old female. The defendant initially groomed her with flattery, saying, "Okay sorry to change the subject but I just noticed you have pictures of yourself on your page and uhm.... wow you are really pretty." The defendant described himself as follows: "I'm chris. From New York. Long Island to be exact. I'm 17, brown hair and brown eyes. About 5 foot eleven inches. I'm a little chubby( sorry if that's not okay) I have a pretty hairy chest and I'm tryna grow a beard currently but I fucking can't ):Uhm I'm very kinky. Hockey is my

2

favorite sports. I have two dogs. I like movies and hanging with friends and video games including call of duty and Minecraft and rocket league\nFav movies: Italian ones." Jane Doe 1 responded that she was "Totally a virgin and have literally nvr had phone sex," also sharing that she was only a "teenager." Nonetheless, the defendant sent Jane Doe 1 numerous audio files in which he persistently requested to see Jane Doe 1 nude, suggesting that they do a FaceTime call while nude, touch themselves and ask each other questions while they "play."

On or about March 24, 2020, the defendant shared a penis picture and after extensive sexual conversations, he begged Jane Doe 1 for more images. The defendant also requested that Jane Doe 1 beg him to carve her name into his chest with a knife. On or about March 25, 2020, Jane Doe 1 joked about calling the police on the defendant, implying that he was doing something illegal by engaging with a minor. Notwithstanding the defendant's repeated requests, and the fact that he shared multiple videos of himself masturbating, Jane Doe 1 only shared images of herself that constitute child erotica.

ii. Jane Doe 2 (PSR at ¶ 10)

From April through September 2020, the defendant was communicating via Twitter with Jane Doe 2, a 15-year-old female. Initially, the defendant groomed Jane Doe 2, saying things like, "You got cute eyes", and then progressed to asking for "lewds." Later, during a highly sexual conversation, Jane Doe 2 said that she was "wet," and the defendant asked for "proof." In response, Jane Doe 2 sent a picture of wet underwear. During these conversations, the defendant asked Jane Doe 2 to write various words and phrases on her body, and specifically under her belly button, including "use my holes", "cum", "whore", "useless", "pig", "desperate", "babyboy," "prince" and "anal slut" and then photograph herself. Thereafter, Jane Doe 2 sent a picture and a video depicting the various words written with a marker on her abdomen.

On or about April 13, 2020, as part of a highly sexual conversation, the defendant said to Jane Doe 2 in substance, "I wanna see your cute little ass bright red from spankings." In response, Jane Doe 2 sent a picture of herself, kneeling on a bed, where she is nude from the waist down, her backside is red, and her vagina is visible in between her legs. Later in the conversation, the defendant asked Jane Doe 2 to "Bend over. Shove your useless face into the bed and spread those cheeks for daddy." Thereafter, Jane Doe 2 sent a photo depicting herself, lying face down on the ground with her backside up in the air, and her vagina is visible in between her legs.

Also on April 13, 2020, the defendant told Jane Doe 2 to "Show me how you fuck yourself Babyboy", and in response, Jane Doe 2 sent a 25-second video wherein she is inserting her fingers in her vagina from behind.

On or about April 23, 2020, after Jane Doe 2 sent the defendant a 42-second video of herself masturbating, the defendant responded, "Try filming it again but this time, put your belt around your neck and pull it." Thereafter, Jane Doe 2 sent the defendant a 36-second video in which Jane Doe 2 is using one hand to pull on a belt to choke herself and the other hand to masturbate. The defendant then instructed, "Move those panties to the side. Show daddy what you're doing." In response, Jane Doe 2 sent a similar video where she pulls her panties to the side and her vagina is partially visible.

3

On or about April 25, 2020, the defendant told Jane Doe 2 to write "CARMINES SLUTTY LITTLY [sic] BOY" on her chest, and Jane Doe 2 complied. In total, Jane Doe 2 sent the defendant approximately 51 files, including images and videos containing child pornography or child erotica. Of the 20 that constitute child pornography, 7 are pictures and 13 are videos.

### iii. Jane Doe 3 (PSR at ¶ 11)

In April and May 2020, the defendant exchanged messages with Jane Doe 3, an approximately 14-16 year-old female. During this time, the defendant requested that they have "Phone sex" or "FaceTime sex" so that defendant could "watch [Jane Doe 3] use yourself for me." On or about April 23, 2020, the defendant told Jane Doe 3, "You're cute as fuck dude\n I'm tryna fuck" and "Do I get to see more of you? I'm mad horny today." Jane Doe 3 responded, "got things for you" and sent a non-pornographic photo of her legs. The defendant responded, "Spread them ??????" Additionally, at the defendant's request, Jane Doe 3 sent a video in which she urinated on herself clothed. Although the images of Jane Doe 3 that were recovered are all child erotica, it appears, based on the context of the entire conversation, that the defendant and Jane Doe 3 did in fact have at least one video call.

### iv. Jane Doe 4 (PSR at ¶ 12)

In August and September 2020, the defendant communicated with Jane Doe 4, a 14 year old female. The defendant told Jane Doe 4 that his name was Chris, he was from New York, and he was 17 years old. On or about August 14, 2020, Jane Doe 4 shared several pictures and a video, which were not child pornography. The defendant praised her, saying "Good call me that and keep sending me more pictures of your body and you will please me babygirl ????????" Jane Doe 4 responded, "i dont take a lot of nudes im sorry" and the defendant said, "You should babygirl. Because your body is fucking sexy." Then he said that they should video chat later. Regarding the video chat, the defendant said, "I wanna degrade you and watch you choke yourself later!!!" When Jane Doe 4 later told the defendant that she was unable to video chat, the defendant responded, "It's fine! I just wanted to watch you touch yourself for me hehehe." On or about August 27, 2020, the defendant requested that Jane Doe 4 FaceTime with him, and Jane Doe 4 said that she was very nervous. The defendant told Jane Doe 4 not to be nervous because "hes seen her naked already," and Jane Doe 4 shared her cell phone number with him. In total, Jane Doe 4 shared 7 child erotica files (3 images and 4 videos).

### v. Jane Doe 5 (PSR at ¶ 13)

In August and September 2020, the defendant communicated with Jane Doe 5, a 13 year-old female. Like others, the defendant began with flattery, saying things like, "Omfg babygirl!! You are drop dead gorgeous," "I'm literally gonna make it my goal to win you over and make you mine," "You're so pretty. I wouldn't mind holding you down and face fucking you." During their ensuing conversations, the defendant asked Jane Doe 5 for a video of her masturbating, which Jane Doe 5 shared on more than one occasion. The defendant also shared a purported video of himself masturbating with Jane Doe 5.

vi. Jane Doe 6 (PSR at ¶ 14)

In September 2020, the defendant communicated with Jane Doe 6, a 13-year-old female, and groomed her, saying things like, "Babygirl! You are ADORABLE" and "you're cute to look at." The conversation escalated, and the defendant asked Jane Doe 6 to have "FaceTime sex." Initially, Jane Doe 6 responded, "heh um i cant bc i have to like do school stuff :(( sorryyy[.]" After the defendant asked Jane Doe 6 if she had toys, and she responded that she only had a brush, Jane Doe 6 sent the defendant a 12-second video of herself, in which she is inserting a hair brush into and out of her vagina. The defendant replied in substance, "Babygirl dont stop," "Keep the videos coming for me," and "I love how wet I made tou [sic]." Several days later, after the defendant complained that he had not "seen [Jane Doe 1] naked in two days :(", and Jane Doe 6 responded that she was busy in school, the defendant asked Jane Doe 6 for more nudes. During their exchanges, the defendant sent Jane Doe 6 several videos of himself masturbating.

vii. Jane Doe 7 (PSR at ¶ 15)

In September and October 2020, the defendant communicated with Jane Doe 7, an approximately 13 to14 year-old girl. During that time, the defendant suggested that they "FaceTime and have sex" and Jane Doe 7 made repeated references to school and homework. On or about September 13, 2020, the defendant said, "Please show me more of that delicous cunt and asshole." Thereafter, Jane Doe 7 sent several pictures, including one of her vagina. Less than two weeks later, the defendant requested videos of Jane Doe 7 masturbating, including at least one where she is, at the defendant's request, slapping her vagina with her hand. In total, Jane Doe 7 sent 3 pictures and 5 videos containing child pornography.

viii. Jane Doe 8 (PSR at ¶ 16)

In September 2020, the defendant communicated with Jane Doe 8, a 17-year-old female. During that conversation, after Jane Doe 8 sent a video of herself masturbating to the defendant, the defendant responded, saying, "Slap that worthless cunt for me," and Jane Doe 8 sent a 13-second video, where she is still masturbating, and she slaps her vagina with her hand 3 times. In total, Jane Doe 8 sent 1 picture and 3 videos containing child pornography.

ix. John Doe 1 (PSR at ¶ 17)

In October and November 2020, the defendant communicated with John Doe 1, a 14-year-old biological female that identified as male. Like with others, the defendant asked John Doe 1 to have phone sex. Additionally, the defendant sought nude videos of John Doe 1 slapping himself, choking himself and using a knife to mutilate his body. Ultimately, John Doe 1 sent a video of themself, sitting down with clothes on, and their hand is visible inside of their pants and they are touching their vagina with their hand. During the conversation, John Doe 1 refers to the defendant as 17 and themselves as being 3 years younger. John Doe 1 ultimately says that they have grown uncomfortable with the age gap, and they cease communicating.

5

x.  John Doe 2 (PSR at ¶ 18)

In November 2020, the defendant was communicating via Twitter with John Doe 2, a 13-year-old transgender male. As part of that conversation, the defendant said the following, in substance and relevant part: "Do you take good nudes?", "You take good nudes? Prove it", "Okay heres what youre gonna do babygirl. Youre gonna grab a sharpie (or a pen) and youre gonna write Im sorry daddy across your tits/chest", "How many words do you think we can add to your body?", "Right above your pussy write cum inside me then have an arrow point to your hole", "Naked in the bathroom?", "Well do you want to keep taking pictures and videos? Or would you prefer to video call me baby?", "Well Im [sic] that case I want 4 videos \n1) you slapping your lretty [sic] face \n2) you gagging on your fingers (the more spit the better) \n3) you choking yourself\n4) you pick! Its your choice for number 4," "Good that can be video #5\nI wanna hear you say my name is [REDACTED] and my teen body belongs to you," "Now put on some clothes and get out of there before people start thinking you fell down the toilet", "Did taking videos for me turn you on?" As part of that conversation, John Doe 2 sent the defendant at least two sexually explicit videos. These include a video where John Doe 2 is lying down, fully nude, with marker on their body and their fingers in their vagina.

xi.  Jane Doe 9 (PSR at ¶ 19)

In November and December 2020, the defendant communicated with Jane Doe 9, an approximately 16-year-old female. Initially, Jane Doe 9 sent a selfie, and the defendant responded by flattering her, telling her that she was "beautiful." As things escalated, the defendant instructed Jane Doe 9 to go to the bathroom and "take pics." Jane Doe 9 responded by sending a non-pornographic image of herself where she is topless. The defendant responded, saying "Let daddy watch you potty slut." Jane Doe 9 then sent a 23-second video of herself where she is urinating in a toilet, and her vagina is visible but her face is not. The defendant responded that he likes her "pussy" and asks for more. During these chats, the defendant asked Jane Doe 9 to FaceTime.

C.  The Defendant's Arrest (PSR at ¶20)

On January 28, 2021, the FBI executed a search warrant at the defendant's home in Holbrook, New York. During the search, the FBI recovered various electronic devices and photographed items in the defendant's home that had appeared in various pictures shared by the defendant on Twitter, including bedspreads and boxer shorts. A preliminary review of the defendant's electronic devices revealed the defendant was signed into the Snapchat account that he had shared with various victims, as well as numerous photos of himself that he shared on Twitter.

On that same date, the defendant was placed under arrest and charged by complaint with sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a). ECF No. 1. He was arraigned and then detained pending trial. ECF No.'s 2-6.

D. The Indictment

On February 23, 2021, a grand jury sitting in the Eastern District of New York returned an eleven-count indictment, charging the defendant with three counts of attempted sexual exploitation of a minor and eight counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and (e). ECF No. 12.

II. Guidelines Calculation

The government agrees with the Guidelines calculation set forth by the United States Probation Department ("Probation") in the PSR, which is the same as that in the Plea Agreement, and to which the defendant stipulated. PSR at ¶¶ 25-119. Given an offense level of 43, which is the maximum under the Guidelines, and a Criminal History Category of I, the advisory Guidelines sentencing range is life. PSR at ¶ 173. Because the statutorily authorized maximum is 360 months' imprisonment, that is the effective Guidelines range. Id.

III. The Defendant Should Be Sentenced to 25 Years in Prison

For the reasons set forth below, the government respectfully submits that the defendant should be sentenced to a term of custody of 25 years.

A. Legal Standard

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines were no longer mandatory, but should be considered in conjunction with the factors outlined in § 3553(a). Thereafter, the Supreme Court confirmed that § 3553(a) requires a sentencing court to give respectful consideration to the Guidelines, but Booker allows the court to "tailor the sentence in light of other statutory concerns[.]" Kimbrough v. United States, 552 U.S. 85, 101 (2007) (citing Booker at 245-46 and Gall v. United States, 552 U.S. 38, 46-49 (2007)). However, the Supreme Court explained that even though the Guidelines are now advisory, "district courts must treat the Guidelines as the 'starting point and the initial benchmark'" when determining a defendant's sentence. Kimbrough at 108 (citing Gall at 50 and Rita v. United States, 168 L. Ed. 203, 213 (2007)).

With the Guidelines as the "starting point and the initial benchmark," the Court should next consider the factors set forth by Congress in § 3553(a). Id. That statute provides that a Court should consider a number of factors when determining a defendant's sentence, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and
>
> (2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. §§ 3553(a)(1) and (2).

As set forth below, in connection with the analysis of the § 3553(a) factors, the nature and circumstances of the offense, in conjunction with the need to deter both the defendant and others from engaging in the violent and destructive conduct such as that here, which targeted the most vulnerable members of the community, overwhelmingly weighs in favor of a substantial sentence for this particular defendant, who relentlessly preyed on minors, drove them to physically harm and degrade themselves, and manipulated them to participate in their own sexual abuse.

B. Analysis

Here, pursuant to Supreme Court precedent, the Court's "starting point and the initial benchmark" when determining the defendant's sentence should be the effective Guidelines range of 30 years. Kimbrough at 108 (citing Gall at 50 and Rita v. United States, 168 L. Ed. 203, 213 (2007)). In light of the sentencing factors set forth by Congress in § 3553(a), the government respectfully submits that a sentence of 25 years in prison is warranted in this case.

As an initial matter, with respect to § 3553(a)(1), the nature and circumstances of the offense, sexually exploiting children is among the most serious of crimes. The immediate and long-term damage caused to victims of such conduct is hard to comprehend. The defendant's crimes are particularly heinous. The defendant created social media accounts for the sole purpose of exploiting minors. Indeed, the defendant pretended to be a 17-year-old boy so that he could connect with minors and gain their trust. The defendant groomed these children, telling them that they were "beautiful" and "gorgeous," and then after drawing them in, manipulated them to please himself. Some of these conversations went on for months, and the defendant then had his victims memorialize this sexual abuse in photos and videos for his own sexual pleasure. Notably, at least two of the defendant's victims, were transgender, and thus particularly vulnerable to manipulation. Overall, the evidence showed that the defendant conversed online with numerous children, both messaging them and engaging in livestreams, and further, caused many of them to engage in not only sexually explicit conduct but also violent and self-destructive conduct.

Indeed, the physical abuse distinguishes this case from many. For example, the defendant had Jane Doe 2 put a belt around her neck and pull it, while she was masturbating on camera, slap her herself until she was red and photograph it, and dehumanize herself by writing words such as "use my holes", "cum", "whore", "useless", "pig", "desperate", "babyboy," "prince" and "anal slut" on her body. Similarly, the defendant had John Doe 2, who was only 13 years old, write "Carmine's whore," "worthless slut," "cum dumpster," and "Carmine owns my teen body," in addition to having him slap, gag and choke himself, and send sexually explicit videos, which were then viewed by John Doe 2's mother. Likewise, the defendant ordered Jane Doe 8 to "slap that worthless cunt for me," and in response, Jane Doe 8 sent a 13-second video, where she is masturbating and slapping her vagina, as instructed.

Moreover, this crime is made more serious because the defendant was a police officer, and thus a mandatory reporter of child abuse. He is someone that swore to protect his

8

community, and instead of doing so, he hid behind the internet to prey on young, vulnerable children. Notwithstanding that the defendant, as a trained police officer, was acutely aware of the law and fully appreciated the destructive nature of his actions, he continued to obsessively manipulate children. Conduct like the defendant's erodes the community's trust in law enforcement, and his actions are a betrayal of not only the New York City Police Department but also the community that he swore to protect.

The defendant's history and characteristics also weigh in favor of a substantial sentence. As previously noted, the defendant was gainfully employed as a police officer at the time of his arrest. Additionally, the defendant was raised in a loving and nurturing family. PSR at ¶ 130. Although the defendant had some developmental and social issues, his parents were staunch advocates for him, ensuring his access to appropriate resources and therapies. Id. Unlike many defendants who come before this court, the defendant grew up not wanting for anything, obtained an undergraduate degree at a competitive college, and achieved notable professional success. Id. at ¶ 132. Thus, the defendant had a generally privileged childhood from which he stood to benefit substantially, and he undoubtedly had resources growing up that far exceed those of many others living in this country. Notwithstanding these extremely positive influences and notable access to resources, the defendant sought out minors online, engaging in surreptitious and destructive conduct for his own personal gratification. Moreover, to the extent that the defendant's developmental delays and social challenges constitute mitigating circumstances, that benefit is already reflected by the parties' plea agreement, which yielded a statutory cap of 30 years' imprisonment, when the Guidelines range would have otherwise been life.

With respect to history and characteristics, the defendant's lack of criminal history does not set him apart from others. Indeed, the vast majority of federal child pornography offenders have no prior records at the time that they are sentenced.[1] Moreover, any mitigating value attributable to the fact that the defendant had never been caught prior to the instance case is outweighed by the fact that his conduct here was not a one-time event. It was not even a multiple-time event with a single victim. This defendant exploited multiple children, some as young as 13 years old, on multiple occasions and over an extended period. His protracted behavior was the product of considerable planning and daily, if not hourly, conscious decisions to manipulate and victimize children. This conduct was not an isolated event.

Consideration of Section 3553(a)(2), the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment for the defendant and promote respect for the law, likewise weighs in favor of a substantial sentence. As previously noted, the defendant's conduct was deliberate, compulsive, pervasive and affected a wide range of children, including the most vulnerable. To the extent the defendant argues that online sexual exploitation is somehow less culpable or less serious than physical sexual exploitation (Defense Sentencing Memorandum, hereinafter "Def. Mem") at 7), this Court should reject that argument. Here, instead of touching children himself, he manipulated them penetrate and abuse themselves.

---

[1] U.S. Sentencing Commission, Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 320 (2011) available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Mandatory_Minimum_Penalties/20111031_RtC_Mandatory_Minimum.cfm.

Thus, even though he never met his victims in person, the defendant still caused traumatic sexual contact—even rape—and in doing so, he used minors as pawns in their own victimization. For victims to live with the knowledge that they participated—albeit as a result of masterful manipulation and grooming—in their own victimization is what makes this type of child exploitation, commonly referred to as production, so harmful to the actual victims. Thus, this conduct is reprehensible, and in some ways, the mental and psychological manipulation of a child to harm themselves is even more serious than certain types of physical abuse.

Still more, the defendant caused his victims to memorialize this traumatic abuse in photos and videos, and so the evidence of this abuse will exist in perpetuity. The defendant's argument to the contrary—i.e., that because he did not traffic in child pornography or sextort his victims, they were spared the trauma of worrying that others would view their images (Def. Mem. at 7)—is divorced from reality and minimizes the harm associated with his conduct. John Doe 2, for example, was exposed because his mother located the images of his abuse, and those images were, rightfully so, shared with law enforcement, magnifying the shame and embarrassment for John Doe 2, who was already vulnerable. Moreover, although the defendant asserts that he did not share the material or save it elsewhere, such self-serving statements are of little consolation to victims who lost all control of these images once they were sent to the defendant. And it is not only the viewing of intimate imagery online that causes pain to victims, but also the wondering, worrying and waiting for such an image to resurface, which can cause paranoia and anxiety for an entire lifetime.

Similarly, the need for the sentence imposed to promote respect for the law, provide just punishment to the defendant and promote general and specific deterrence, likewise supports a substantial sentence. Here, the defendant disguised his identity and used Twitter to gain access to children and child exploitation material. Although he claims that he was just looking for people with "shared sexual interests" (Def. Me. at 6), this assertion is undermined by the fact that the defendant pretended to be 17 years old, in an obvious attempt to connect with and entice minors. Today, there are countless applications that can and are used by pedophiles to engage in the very same crimes as those committed by the defendant. The pool of vulnerable minors on these applications grows larger everyday as children increasingly access and use the internet. Indeed, in a report published in 2021, the United States Sentencing Commission observed that "a growing proportion of production offenders exploit victims remotely through the use of the internet and mobile devices."[2] According to the same report, "the expansion of digital and mobile technology has contributed to a 422 percent increase in the number of production offenders sentenced over a 15-year period, from 98 offenders in fiscal year 2005 to 512 offenders in fiscal year 2019." Id. at 3. In light of the increasing frequency at which these crimes are being committed, it is important for the public to be aware that predators like the defendant seek out victims in this arena, and for people like the defendant to understand that

---

[2] United States Sentencing Commission (2021), Federal Sentencing of Child Pornography: Production Offenses, at 1, 35, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf (the "Child Pornography Production Report") ("For example, over one-third (35.4%) of production offenders sentenced in fiscal year 2019 were internet strangers who met their victims through an online platform, more than double the proportion of offenders sentenced in fiscal year 2010 who met their victims online (14.3%)).

their crimes—which are just as harmful as hands-on sexual offenses—will be punished commensurate with their seriousness. Thus, a lengthy sentence in this case would send a strong message to those, both domestically and abroad, who seek to sexually exploit children online, that courts will not tolerate the sexual abuse of children and that the consequences for such criminal conduct will be significant.

Pursuant to 3553(a)(2)(D), it is imperative that the sentence imposed protect the public from the further crimes of the defendant, which will most effectively be done when he does not have access to electronic devices that access the internet, which can only be done when he is incarcerated. The sentence imposed must prevent the defendant from reengaging in this behavior, and thereby harming the most vulnerable members of our community.

Finally, a sentence of 25 years' incarceration is consistent with the sentences imposed in this district and on a national level in comparable cases. For example, on March 2, 2022, in United States v. Caroleo, the defendant, who pleaded guilty just prior to trial, was sentenced to 30 years' incarceration in connection with his conviction for the online sexual exploitation of a minor. No. 17-CR-177 (S-1) (ENV). In that case, the defendant, who had a demonstrated history of physical and emotional trauma, caused a 14-year-old girl to produce sexually explicit images of herself, and to send those images to him using the Kik application. Similarly, on October 14, 2022, in United States v. Torres Rivas, the defendant, who pleaded guilty prior to trial, was sentenced to 25 years' incarceration in connection with his conviction for the online sexual exploitation of a minor. No. 20-CR-494 (GRB). In that case, the defendant targeted multiple minor females on Snapchat, including a 13-year-old. See also United States v. Mejia, 18-CR-81 (JMA) (imposing 28 year sentence in case where defendant used Facebook, posed as a 13-year-old-boy, and manipulated minors to perform sexually explicit acts and photography their younger relatives nude); United States v. Weiss, No. 21-CR-449 (PMH) (S.D.N.Y. Nov. 15, 2022) (imposing 25-year sentence in case where defendant engaged in the sexual exploitation of numerous young teens through the use of Snapchat); United States v. Deutsch, No. 18-CR-502 (FB) (imposing 20 year sentence in case where defendant was convicted after trial of sexually exploiting four victims, between ages 11 and 16, but none of whom were manipulated to physically abuse themselves). Unlike the defendants in these cases, the defendant directed his victims to physical harm and dehumanize themselves, and he was a police officer at the time. As a result, the conduct here is more egregious than that in Caroleo, Torres Rivas, Weiss and Deutsch.

By way of further example, according to the Child Pornography Production Report, based on a review of federal sentences imposed in 2019, the average sentence for offenders who sexually exploited minors was 275 months' incarceration. Child Pornography Production Report at 50. Relatedly, courts imposed longer than average sentences when various factors were present in a case, many of which are also present in the defendant's case, including: victims engaged in sexual contact alone, including self-contact id. at 47; the defendant's use of coercive tactics and enticements, id. at 48; the defendant's misrepresentation of his identity to commit the offense, id.; and the defendant's pattern of sexual exploitation of children, id. at 50.

IV. <u>Conclusion</u>

Although the defendant experienced his own challenges growing up, and does not have a criminal history, his conduct was horrific, even setting him apart from other individuals who are guilty of violating the same statute. He is a manipulative and destructive bully, with a demonstrated sexual interest in the most vulnerable members of our society, for whom he has absolutely no regard. The level of sexual and psychological violence used by the defendant against his victims supports a significant sentence, not less than 25 years, notwithstanding any mitigating evidence put forth. Indeed, such a sentence is necessary to reflect the seriousness of the offense and protect the public from further harm.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: _____/s/_____
Megan E. Farrell
Assistant U.S. Attorney
(631) 715-7862

cc: Clerk of the Court (FB) (by ECF)
Counsel for the defendant (by ECF)
Gregory Giblin, Probation Department (by email)